# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

―――――――――――――

Nº 05-CV-5462 (RJS) (KNF)

―――――――――――――

JOSEPH MURRAY,

Plaintiff,

VERSUS

VISITING NURSE SERVICES OF NEW YORK, AND HOWARD FREY,

Defendants.

―――――――――――――

MEMORANDUM AND ORDER
October __, 2007

―――――――――――――

RICHARD J. SULLIVAN, District Judge:

Plaintiff Joseph Murray ("Murray") brings this action against defendants Visiting Nurse Services of New York ("VNS") and Howard Frey ("Frey"), alleging employment discrimination on the basis of his gender and sexual orientation, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("CHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. Specifically, plaintiff asserts that defendants discriminated against him because he was a heterosexual male, and retaliated against him for complaining about the conduct of homosexual male co-workers. Defendants move for summary judgment as against all of plaintiff's claims. For the reasons that follow, defendants' motion is granted as to plaintiff's Title VII claims, and the Court declines to exercise supplemental jurisdiction over the remaining state and city claims.

## I. BACKGROUND

### A. Plaintiff's Employment

VNS is a certified home healthcare agency that provides in-home healthcare to

New York State residents. (Defs.' 56.1 ¶ 1.)[1] Plaintiff began employment at VNS in or around April 2001 in the position of Business Supervisor for the Manhattan region of VNS' "Acute Care Program." (*Id.* ¶ 7.)

In July 2001, defendant Frey, VNS' Regional Operations Controller, promoted plaintiff to the position of Field Security Manager in the Manhattan region. (*Id.* ¶ 9.) In that position, plaintiff supervised three other Business Supervisors in their management of the mailroom, the medical supply room, and the office supply room, in addition to supervising the escorts and translators in the Manhattan region. (*Id.* ¶ 10.) Frey served as plaintiff's supervisor at all times subsequent to plaintiff's promotion. (*Id.* ¶ 14; Pl.'s 56.1 ¶ 14.)

### B. Alleged Harassing Conduct

#### 1. Alleged Offensive Comments

Plaintiff alleges that his co-workers made certain comments in the workplace that he, as a heterosexual male, found offensive. (Defs.' 56.1 ¶ 15; Murray Tr. at 32.)[2] Specifically, according to plaintiff, he overheard male co-workers direct the following comments to other employees: "you're a bitch"; "he's on the rag today"; "when are you going to come out of the closet?"; "are you ladies going to the parade?" (Pl.'s 56.1 ¶ 15.) Furthermore, according to plaintiff, he overheard two or three male co-workers refer to one another as "girls," "ladies," and "bitch." (Defs.' ¶ 15; Pl.'s 56.1 ¶ 15.) Plaintiff asserts that he overheard such comments emanating from

another office, located approximately "fifteen feet" down the hall from his own office. (Murray Tr. at 36.) None of these comments were directed at plaintiff, either as an individual or when he was present among a group of co-workers. (Defs.' 56.1 ¶¶ 16-17; Pl.'s 56.1 ¶¶ 16-17.)

Plaintiff also asserts that co-workers would occasionally say "good morning ladies" to groups of male co-workers which included plaintiff. (Murray Tr. at 37-38; Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 16.) Plaintiff specifically identified one co-worker, Michael Soccio ("Soccio"), as making the overwhelming majority of these greetings. (Defs.' 56.1 ¶ 19; Pl.'s 56.1 ¶ 19.) Plaintiff characterized Soccio's demeanor when making such comments as follows:

> It was like good morning. It was like matter of fact. You know, it was like everyday how do you do.

(Murray Tr. at 38.) Notwithstanding plaintiff's characterization of Soccio's demeanor, plaintiff asserts that he found such greetings offensive because he is "not a woman." (*Id.*)

At some point in early 2003, plaintiff complained to Frey that he was hearing such comments, and that he found them to be offensive (hereinafter, "the 2003 complaint"). (Murray Tr. at 34-35.) According to plaintiff, after he complained to Frey in early 2003, all of the comments subsided for a period of time. (Defs.' 56.1 ¶¶ 19-20; Pl.'s 56.1 ¶¶ 19-20.) However, plaintiff asserts that, after an indeterminate period of time, he once again began to overhear co-workers making such comments to one another, although co-workers no longer directed such comments at groups of co-workers which included plaintiff. (Murray Tr. at 32-33.) Plaintiff did not report

---

[1] Where only one party's 56.1 Statement is cited, the facts are taken from that party's 56.1 Statement, and the other party does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

[2] Hereinafter, "Tr." refers to the transcript of the deposition of the named individual

to Frey or to VNS' human resources department that he was once again overhearing such comments. (Defs.' 56.1 ¶ 22; Pl.'s 56.1 ¶ 22.)

In any event, it is undisputed that none of the comments were directed individually at plaintiff while he was apart from groups of other co-workers. (Defs.' 56.1 ¶¶ 16-17; Pl.'s 56.1 ¶¶ 16-17; Murray Tr. at 37-38.)

### 2. The Newspaper Picture

In February 2004, plaintiff observed a group of employees gathered around a newspaper bearing a photograph of President George W. Bush along with the headline "President Bans Gay Marriage." (Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24.) Plaintiff observed that someone had drawn on the photograph, in pencil, a picture of a penis beneath the President's mouth (hereinafter, the "picture"). (*Id.*) One co-worker identified Soccio as the person who had drawn the picture. (*Id.*) Plaintiff did not ask Soccio if he had drawn the picture. (*Id.*)

Subsequently, plaintiff took the picture, showed it to one of his subordinates, Lin Gecaj ("Gecaj"), made a photocopy, and stored that copy in a safe at his home. (Defs.' 56.1 ¶ 25.) In addition, in March 2004, plaintiff brought the picture to Frey's attention, and indicated that he found it to be "highly offensive" (hereinafter, "the 2004 complaint"). (*Id.* ¶ 26; Pl.'s 56.1 ¶ 26; Murray Tr. at 64.) Plaintiff did not report the picture incident to VNS' human resources department, even though he was aware that discrimination complaints should be directed to that department. (Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶ 27.) However, according to plaintiff, Frey discouraged plaintiff from forwarding the picture to VNS' human resources department by promising that he would

address the matter. (Pl.'s 56.1 ¶ 26.) Specifically, it is undisputed that plaintiff asked Frey to take the picture to VNS' human resources department, but that Frey told plaintiff to leave the picture with Frey and that he would take care of the matter. (Frey Tr. at 11; Pl.'s 56.1 ¶ 26.) Frey then placed the picture in a desk drawer and took no action. (Defs.' 56.1 ¶ 26.) A few weeks later, plaintiff visited Frey and asked what Frey had done with the picture. (*Id.*; Frey Tr. at 11-12.) According to Frey, at the time of plaintiff's second visit, he had "forgotten all about" the picture and, upon being reminded of it by plaintiff, decided that it would be better to "destroy" the picture rather than report it to VNS' human resources department and risk creating tension between plaintiff and Soccio (the individual whom plaintiff believed to have drawn the picture). (*Id.*; Frey Tr. at 11-12.) Frey eventually threw the picture away. (Defs.' 56.1 ¶ 26.)

### 3. Other Alleged Harassing Conduct

Other than the two complaints to Frey described *supra*, plaintiff did not make any other complaints to anyone at VNS regarding allegedly offensive behavior by co-workers. (Defs.' 56.1 ¶ 28.) However, plaintiff asserts that he experienced two other instances of offensive conduct and/or comments during his employment at VNS.

First, plaintiff asserts that, at some point in or around 2003 or 2004, he observed Frey "adjust himself" on two or three occasions in 2003. (*Id.* at ¶ 29.) Plaintiff asserts that Frey engaged in such conduct on the "office floor," where there were "fifty or sixty" secretaries and other VNS personnel. (Murray Tr. at 92-93.)

Second, plaintiff alleges that a co-worker, Louis Gioe ("Gioe"), pointed to an object on

the floor and told plaintiff "to bend over and pick that up and I'll drive you home." (Murray Tr. at 97; Defs.' 56.1 ¶ 30; Pl.'s 56.1 ¶ 30.)  Plaintiff asserts that, although he and Gioe "were acquaintances" who "joked around" (Murray Tr. at 126-27), he found the comment to be a "bad joke" and was offended by it.  (Pl.'s 56.1 ¶ 30.)

With regard to all of the conduct described *supra*, plaintiff concedes that his co-workers' allegedly offensive conduct did not affect his job performance.  (Defs.' 56.1 ¶ 13; Pl.'s 56.1 ¶ 13.)

### C. Plaintiff's Job Performance

In early 2003, the Senior Mail Clerk in VNS' mailroom, Jose Vargas ("Vargas"), filed a complaint with VNS alleging that plaintiff treated Vargas disrespectfully and picked on him.  (Defs.' 56.1 ¶ 32; Pl.'s 56.1 ¶ 32.)  In addition, at some later point in 2003, certain mailroom employees complained to VNS that plaintiff favored female employees over male employees, and improperly met with female employees behind closed doors.  (Defs.' 56.1 ¶ 35.)

Subsequently, in November 2003, certain mailroom employees complained to VNS that plaintiff had improperly limited the employees' security card access privileges, thus interfering with the employees' ability to deliver mail.  (Defs.' 561. ¶ 36.)  Upon receiving such complaints, VNS' Regional Administrator of the Manhattan Acute Care Program, Virginia Field ("Field"), ordered plaintiff to restore the necessary security card access privileges to mailroom personnel.  (Defs.' 56.1 ¶ 37.)  Plaintiff asserts that he originally restricted the mailroom employees' access at the direction of one of his supervisors, and that he returned such privileges to the mailroom employees

immediately upon receiving instructions to do so.  (Pl.'s 56.1 ¶¶ 35-36.)

In late 2003, VNS' Employee Relations Manager, Mary Cristina Ruiz ("Ruiz"), commenced an investigation into the complaints about plaintiff and his supervision of his staff.  (Defs.' 56.1 ¶ 38; Ruiz Aff. ¶¶ 3-6.)  According to defendants, as a result of the investigation, Ruiz and Field agreed that plaintiff was an ineffective supervisor and that his job responsibilities relating to the mail and package rooms should be reassigned to another VNS employee.  (Defs.' 56.1 ¶ 39; Ruiz Aff. ¶ 6; Field Aff. ¶ 4.)  Ruiz also recommended that plaintiff receive "conflict management training."  (Ruiz Aff. ¶ 6.)  At the time Ruiz and Field made these decisions, neither individual knew that plaintiff had made complaints to Frey regarding inappropriate conduct by co-workers.  (Defs.' 56.1 ¶¶ 48, 52; Field Aff. ¶ 8; Ruiz Aff. ¶ 7.)[3]

---

[3]  In plaintiff's 56.1 Counterstatement, he "denies knowledge sufficient to form a belief as to [the] truth" of several factual assertions in defendants' 56.1 Statement, including defendants' assertion that Ruiz, Field, and VNS' Vice President for Operations, Ingrid Jimenez ("Jimenez"), lacked knowledge of plaintiff's complaints of discrimination at all times prior to plaintiff's discharge.  (*See* Pl.'s 56.1 ¶¶ 38, 40, 41, 44, 48, 49, 52, 54.)  However, the paragraphs containing plaintiff's denials based on a purported lack of knowledge fail to include any citations to admissible evidence.  Thus, it is clear that such unsupported denials violate Local Civil Rule 56.1(d), which provides that "Each statement made by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."  Local Civil Rule 56.1(d).  However, notwithstanding that defect, the Court has searched the record for evidence contrary to defendants' assertions in paragraphs 38, 40, 41, 44, 48, 49, 52, and 54 of their 56.1 statement, as well as the evidence offered in support thereof, and finds, as discussed *infra*, that plaintiff has failed to present *any*

Sometime in late 2003, Field and Ruiz also instructed Frey, plaintiff's immediate supervisor, that plaintiff's performance evaluation and bonus for the 2003 calendar year (hereinafter, the "2003 performance evaluation" and "2003 bonus", respectively) should reflect the changes in his performance and job responsibilities. (Defs.' 56.1 ¶ 41; Ruiz Aff. ¶ 6; Field Aff. ¶ 4; Pl.'s 56.1 ¶ 39.) Frey then advised plaintiff of the decisions regarding plaintiff's job responsibilities and 2003 bonus. (Murray Tr. at 26, 46.)

Subsequently, in plaintiff's 2003 performance evaluation, dated March 9, 2004, Frey rated plaintiff as not meeting the expectations of "Job Responsibility #3" relating to "Management of the Stockroom, Medical Record room, Mailroom and Medical Supply Room Inventories/Business Reply Account." (Florentino Aff. Ex. 1.) In the evaluation, Frey noted that "[d]ue to conflict with mail room and Bag Prep room which could not be resolved, these areas were transferred to another manager, thus reducing [plaintiff's] scope of responsibility." (*Id.*) With regard to plaintiff's bonus compensation, plaintiff was awarded a 4% performance bonus for 2003, which was in the middle of the bonus scale applicable to plaintiff for that year. (Defs.' 56.1 ¶ 42; Pl.'s 56.1 ¶ 42.)

---

evidence from which a reasonable inference regarding such assertions could be drawn in plaintiff's favor. As such, it is beyond doubt that plaintiff's denials based on his purported lack of knowledge do nothing to contradict defendants' factual assertions, at least where defendants' assertions are supported by the record. (*See* Ruiz Aff. ¶ 8; Jimenez Aff. ¶ 4; Field Aff. ¶ 8.) Accordingly, viewing the record in the light most favorable to plaintiff, the Court finds that plaintiff has failed to offer any evidence contrary to defendants' assertion that Ruiz, Field, and Jimenez lacked knowledge of plaintiff's complaints; indeed, plaintiff has failed even to offer a conclusory allegation regarding those individuals' knowledge of such complaints.

Defendants assert that the performance evaluation and 2003 bonus decision were completed before plaintiff complained about the picture, even though the evaluation was not executed and the bonus was not actually paid to plaintiff until *after* plaintiff made such a complaint. (Defs.' 56.1 ¶ 44.) At his deposition, plaintiff conceded that VNS' decision to reduce his job responsibilities was unrelated to his gender and sexual orientation, but asserts that the decisions were made in retaliation for plaintiff's complaints of discrimination. (Murray Tr. at 31; Pl.'s 56.1 ¶¶ 46-47.)

D. The End of Plaintiff's Employment at VNS

According to defendants, in November 2004, Jimenez and Field determined that plaintiff's position should be eliminated in order to reduce costs. (Field Aff. ¶ 6; Jimenez Aff. ¶ 4.) Field informed plaintiff of his termination on November 19, 2004, which became effective on December 24, 2004. (Defs.' 56.1 ¶ 53.) At the time of plaintiff's termination, plaintiff was told that his position was being eliminated due to "downsizing." (Murray Tr. at 116-17.)

Defendants assert that the decision to eliminate plaintiff's job was based on (1) the reduced need for plaintiff's position because VNS had hired another staff member in the Employee Safety Department, who took on many of the functions that plaintiff had previously performed (Murray Tr. at 50; Defs.' 56.1 ¶ 50); and (2) the fact that all field offices of VNS' Acute Care Program, *other* than the Manhattan field office, operated without the position of Field Security Manager (Defs.' 56.1 ¶ 49; Pl.'s 56.1 ¶ 49; Murray Tr. at 61.) At the time they decided to terminate plaintiff, Field and Jimenez were unaware of plaintiff's complaints to Frey

regarding his co-workers' conduct.[4]   (Field Aff. ¶ 8; Jimenez Aff. ¶ 3; Pl.'s 56.1 ¶ 52; Defs.' 56.1 ¶ 52.)

## E. Procedural History

On December 22, 2004, plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC").  (Defs.' 56.1 ¶ 5.)  In March 2005, the EEOC issued a "right to sue letter" regarding plaintiff's EEOC charge, in which the EEOC stated that it was "unable to conclude that the information obtained establishes violations of the statutes."  (*Id.* ¶ 6; Pl.'s 56.1 ¶ 6.)

Plaintiff commenced this action by filing a complaint on June 9, 2005.  Defendants moved for summary judgment as to all of plaintiff's claims on July 24, 2006.

## II. STANDARD OF REVIEW

The standards for summary judgment are well-settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007).  The moving party bears the burden of showing that he or she is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court "is not to weigh the evidence but is instead

required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007).  As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'"  *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."  *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil

---

[4] As noted *supra*, plaintiff has failed to offer any evidence contrary to this assertion and the evidence found in the record in support therefor.

that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. DISCUSSION

A. Plaintiff's Causes of Actions

Plaintiff alleges the following claims: discrimination on the basis of gender under Title VII; discrimination on the basis of gender and sexual orientation under the NYHRL and CHRL; retaliation and hostile work environment under Title VII, NYHRL, and CHRL; and aiding and abetting unlawful conduct under the NYHRL. The Court notes that plaintiff's claims relating to his sexual orientation are cognizable under the NYHRL and CHRL, but *not* under Title VII. *See, e.g., Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) ("'[T]he law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation.'") (quoting *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000)); *Riscili v. Gibson Guitar Corp.*, No. 06 Civ. 7596 (RJH), 2007 WL 2005555, at *2 (S.D.N.Y. July 10, 2007). For the reasons set forth in Part III.C, *infra*, the Court declines to address the merits of these claims, as well as plaintiff's remaining state and city claims.

B. Title VII Claims

1. Statute of Limitations

In order to assert a Title VII claim in federal court, a plaintiff must file an administrative charge alleging discrimination within 300 days of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-09 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)); *Ruhling v. Tribune Co.*, No. 04 Civ. 2430 (ARL), 2007 WL 28283, at *8 (E.D.N.Y. Jan. 3, 2007) ("Under Title VII and the ADEA, a plaintiff must file an administrative charge . . . within 300 days after a claim accrues."); *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004). This statutory filing period is "analogous to a statute of limitations," *Van Zant*, 80 F.3d at 712, and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00 Civ. 6307 (KMK), 2007 WL 259937, at *6 (S.D.N.Y. Jan. 29, 2007) (citing *Hill*, 312 F. Supp. 2d at 472); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). The filing period begins to run for each discrete discriminatory act when each such act occurs. *See Morgan*, 536 U.S. at 114; *Hill*, 312 F. Supp. 2d at 472.

In this case, plaintiff filed a discrimination claim with the EEOC on December 22, 2004. At that time, the statute of limitations had run for any of plaintiff's Title VII claims relating to alleged discriminatory acts that occurred before February 28, 2004, three-hundred days prior to the filing of plaintiff's charge of discrimination with the EEOC. Therefore, plaintiff's Title VII claims relating to any discrete acts of discrimination that occurred prior to that date are dismissed as time-barred.

Specifically, the Court finds that plaintiff's discrimination and retaliation claims under Title VII relating to the reduction of his job responsibilities in late 2003 (hereinafter, the "demotion") are time-barred. Although the record does not indicate the specific date when the demotion occurred, it is undisputed that another VNS manager assumed plaintiff's job responsibilities relating to the mailroom and package room sometime in "mid-2003." (Murray Tr. at 46.) Therefore, because any Title VII claims relating to discrete acts of discriminatory and/or retaliatory conduct that occurred prior to February 28, 2004, are time-barred, plaintiff's claims relating to his demotion are dismissed.

By contrast, it is undisputed that VNS made a final decision with regard to plaintiff's 2003 performance evaluation, his 2003 bonus decision, and the elimination of his job *after* February 28, 2004. Accordingly, plaintiff's Title VII claims relating to these allegedly unlawful acts by defendants are timely.

## 2. Title VII Claims Against the Individual Defendant

Plaintiff's Title VII claims against Frey must fail as a matter of law. "It is axiomatic that Title VII does not provide a cause of action against individual defendants." *Zhao v. State Univ. of N.Y.*, 472 F. Supp. 2d 289, 320 (E.D.N.Y. 2007) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000), and *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)); *see Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("Before reaching the substance of Patterson's Title VII claim for unlawful termination, we note that 'individuals are not subject to liability under Title VII.'") (quoting

*Wrighten*, 232 F.3d at 120). Here, it is beyond doubt that plaintiff's claims against Frey under Title VII are contrary to this well-established principle. Accordingly, Frey's motion for summary judgment as to the Title VII claims is granted.[5]

### 3. Gender Discrimination Claim

As to the substance of plaintiff's gender discrimination claim under Title VII, he asserts that defendants engaged in the following discriminatory acts on the basis of plaintiff's gender: (1) removing plaintiff's job responsibilities relating to the mail and package rooms (*i.e.*, the "demotion"); and (2) terminating plaintiff's employment with VNS. As noted *supra*, however, plaintiff's Title VII claims relating to his demotion are time-barred. In addition, for the reasons set forth below, the Court grants defendants' motion as to plaintiff's remaining gender discrimination claim.

### a. Legal Standard

Because plaintiff presents no direct evidence of discriminatory treatment based on his gender, the Court reviews his discrimination claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp.*

---

[5] The Court notes that the CHRL and NYHRL permit an individual defendant to be held liable for employment discrimination. Specifically, an individual may be liable where that individual "actually participates in the conduct giving rise to a discrimination claim." *Tomka*, 66 F.3d at 1317; *see Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) ("[T]he claims against the named individual defendants may proceed under the NYCHRL . . . ."); *see also Briggs v. Mercedes-Benz Manhattan, Inc.*, No. 04 Civ. 7094 (RMB), 2006 WL 2789927, at *10 (S.D.N.Y. Sept. 27, 2006). However, for the reasons set forth *infra*, the Court declines to address the merits of such claims.

*v. Green*, 411 U.S. 792, 802-03 (1973). *See, e.g., Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005). "[T]he employee bears the initial burden of producing evidence sufficient to support a *prima facie* case of discrimination [or retaliation]." *Id.* at 807. To establish a *prima facie* case of discrimination, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*." *See Woodman*, 411 F.3d at 76; *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the termination.'" *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*.

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case, as well as additional evidence. It is

not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*' minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Ed. Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

b. Analysis

As an initial matter, the Court finds that plaintiff has satisfied the first three prongs of the *prima facie* standard under *McDonnell Douglas* with regard to his gender discrimination claim.[6] However, the Court further finds that plaintiff has failed to make a *prima facie* showing that the adverse employment actions at issue in this case

---

[6] The Court rejects defendants' argument that plaintiff has failed to produce sufficient evidence to satisfy the second prong of the *prima facie* standard regarding his satisfactory job performance. Plaintiff has proffered evidence demonstrating that he received some positive performance evaluations and a promotion during the course of his employment at VNS, and challenges the bases of the criticisms set forth in his 2003 performance evaluation. (Murray Tr. 20-21.) Thus, although plaintiff's evidence as to his satisfactory job performance is admittedly thin, the Court finds that, given the *de minimis* burden at the *prima facie* stage, plaintiff has satisfied this prong. *See, e.g., Woodman*, 411 F.3d at 76; *De La Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20-21 (2d Cir. 1996) ("To satisfy the second element of the test, [the plaintiff] need not demonstrate that his performance was flawless or superior. Rather, he need only demonstrate that he possesses the basic skills necessary for performance of [the] job.") (internal quotation marks and citation omitted).

occurred under circumstances giving rise to an inference of discrimination based on plaintiff's gender, and, as such, that plaintiff has failed to satisfy the fourth prong of the *prima facie* standard. *See Cruz*, 202 F.3d at 567.

Plaintiff attempts to establish an inference of gender discrimination through evidence of disparate treatment. "A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citations omitted). In order to establish a disparate treatment claim, the plaintiff must show that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself.]" *Id.* (internal quotation marks and citation omitted). The question of whether two employees are "similarly situated" is generally a triable issue for the fact finder. *Id.*; *Graham v. Long Island Railroad*, 230 F.3d 34, 39 (2d Cir. 2000). Nonetheless, a plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees. *See, e.g., Hayes v. Kerik*, 414 F. Supp. 2d 193, 204 (E.D.N.Y. 2006); *Spiegler v. Israel Discount Bank of New York*, No. 01 Civ. 6364 (WK), 2003 WL 21983018, at *2 (S.D.N.Y. Aug. 19, 2003) ("A court can properly grant summary judgment [on a discrimination claim] where no reasonable jury could find the similarly situated prong met.") (citing *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499-500 n.2 (2d Cir. 2001) ("This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong

met.") (internal citation omitted)).

Here, plaintiff asserts that he was demoted and, eventually, terminated after one of his subordinates, Vargas, made complaints regarding plaintiff's management style, while three other, allegedly similarly situated VNS employees who engaged in workplace misconduct did not receive equally severe punishments. However, with regard to his gender discrimination claim, plaintiff has failed to point to any other VNS employee *outside* of the protected class at issue – namely, males – who were treated differently than plaintiff.

Instead, plaintiff relies solely on evidence of purportedly disparate treatment relating to three *male* co-workers, Soccio, Gioe, and Donnelly. (*See* Pl.'s Br. at 17-18.) As such, it is beyond doubt that all of the alleged comparators identified by plaintiff are *within* the protected class at issue in the gender discrimination context – namely, males. Thus, the fact that these purported comparators are of allegedly different sexual orientation is of no moment, since discrimination on the basis of sexual orientation is not prohibited by Title VII. *See, e.g., Dawson*, 398 F.3d at 217. Accordingly, because plaintiff has failed to offer any evidence that defendants "treated him less favorably than a similarly situated employee *outside* his protected group," *Graham*, 230 F.3d at 39 (emphasis supplied), the Court finds that plaintiff cannot, as a matter of law, establish an inference of gender discrimination sufficient to satisfy the *prima facie* standard. *See, e.g., Goldman v. Admin. for Children's Servs.*, No. 04 Civ. 7890 (GEL), 2007 WL 1552397, at *6 (S.D.N.Y. May 29, 2007) ("[P]laintiff's claim of discrimination . . . must fail, as she has not identified any individuals 'outside' of the 'protected group' to whom she may compare

herself."); *Chan v. NYU Downtown Hosp.*, No. 03 Civ. 3003 (RMB), 2006 WL 345853, at *5 (S.D.N.Y. Feb. 14, 2006) (granting summary judgment where the plaintiff "fail[ed] to identify any similarly situated individuals outside her protected class who were treated preferentially by the [defendant] . . .").

Accordingly, the Court finds that there is no genuine issue of material fact as to whether defendants discriminated against plaintiff on the basis of his gender and, therefore, grants defendants' motion as to that claim.

### 4. Retaliation Claim

Defendants argue that plaintiff also fails to proffer evidence from which a reasonable jury could find that defendants retaliated against plaintiff for engaging in protected activity, in violation of Title VII.   For the following reasons, the Court agrees and grants defendants' motion as to plaintiff's retaliation claim.

### a. *Prima Facie* Case

The Court also reviews plaintiff's retaliation claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas*.  *See, e.g.*, *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  To establish a *prima facie* case of retaliation, plaintiff must show "(1) participation in a protected activity known to the defendant[s]; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (quotations omitted); *see also Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199, 205-6 (2d Cir. 2006). As with plaintiff's gender discrimination

claim, although the burden that a plaintiff must meet at the *prima facie* stage is minimal, the plaintiff must proffer at least competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.  *See Cronin v. Aetna Life Ins.*, 46 F.3d 196, 204 (2d Cir. 1995).

Here, it is clear that plaintiff has satisfied the first two prongs of the *prima facie* standard with respect to his retaliation claim. With regard to the first prong, plaintiff has proffered evidence that he engaged in protected activity by making two complaints to his supervisor, Frey, regarding the purportedly offensive conduct of his co-workers.   For the purposes of the instant motion, these complaints constitute protected activity under Title VII because, viewing the evidence in plaintiff's favor, it appears that plaintiff "had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII" when he lodged complaints regarding the purportedly hostile nature of his work environment.  *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001); *see Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (finding that, "[t]o prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII," but only that he held a "'good faith, reasonable belief that the underlying challenged actions of the employer violated the law'") (quoting *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986)). In addition, plaintiff's complaints clearly satisfy the "knowledge requirement" of the first prong of the *prima facie* standard. *Gordon v. New York Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither [the Second Circuit] nor any other circuit has ever held that, to satisfy the knowledge requirement,

anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."); *see also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (finding that the plaintiff's internal complaints regarding co-workers' offensive comments satisfied the first prong of the *prima facie* standard); *Campbell v. Home Depot U.S.A., Inc.*, No. 03 Civ. 1421 (KMK) (HBP), 2006 WL 839001, at *11 (S.D.N.Y. March 30, 2006) (finding, for the purposes of the first prong of the *prima facie* standard, that "[w]hether or not the individual employees who decided to terminate [the plaintiff] knew of her complaint is immaterial to resolving the knowledge requirement").

Second, with regard to the adverse employment action prong, it is undisputed that defendants (1) demoted plaintiff in early 2003;[7] and (2) terminated plaintiff's employment with VNS in November 2004, and that such actions satisfy this prong of the *prima facie* standard.

However, plaintiff has failed to satisfy the third prong of the *prima facie* standard, regarding the causal connection between plaintiff's protected activities and the adverse employment action at issue. Causation can be proved either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon*, 232 F.3d at 117. Here, plaintiff has not offered any direct evidence of retaliatory animus against him by or on behalf of defendants. In addition, the Court finds, for the following reasons, that plaintiff has failed to present even circumstantial evidence regarding (1) the decisionmakers' knowledge of plaintiff's protected activities; and (2) disparate treatment of similarly situated employees from which a reasonable jury could find a retaliatory animus on the part of defendants.

First, it is undisputed that the particular decisionmakers responsible for the adverse actions at issue here lacked knowledge of plaintiff's protected activity. In *Gordon*, the Second Circuit observed that knowledge on the part of the employees actually responsible for the alleged adverse employment action may be relevant "as some evidence of a lack of a causal connection." *Gordon*, 232 F.3d at 117. As such, district courts have consistently held that, with regard to the causation prong of the *prima facie* standard, "[a]bsent any evidence to support an inference that [the decisionmakers] knew of [p]laintiff's complaints, [p]laintiff cannot rely on circumstantial evidence of knowledge as evidence of causation." *Campbell*, 2006 WL 839001, at *13; *see Laurin v. Pokoik*, No. 02 Civ.1938 (LMM), 2005 WL 911429, at *5 (S.D.N.Y. April 18, 2005) (noting that, in order to establish a *prima facie* case of retaliation, the plaintiff "must demonstrate not only that [the defendant corporation] as an entity knew of [the plaintiff's] engagement in the protected activities, but also that the actual decisionmaker(s) knew about her protected activities as well"); *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006) ("In short, the plaintiff has failed to establish a *prima facie* case of retaliation because there is no evidence that any of the decisionmakers was aware of the plaintiff's protected activity and thus no evidence of a causal connection.");

---

[7] Although plaintiff relies on his demotion as an adverse employment action in support of his retaliation claim, his Title VII claims relating to the demotion are time-barred for the reasons discussed in Part III.B.1, *supra*.

*Philippeaux v. Fashion Inst. of Tech.*, No. 93 Civ. 4438 (SAS), 1996 WL 164462, at *6 (S.D.N.Y. April 9, 1996) ("In order to prevail on his retaliation claims, . . . [the plaintiff] must demonstrate not only that [the defendant school] as an entity knew of his engagement in the protected activity, but also that the actual decisionmaker(s) knew about it as well.") (internal citation omitted).

Here, it is undisputed that Field and Jimenez, at the time they decided to terminate plaintiff's position, lacked any knowledge of plaintiff's complaints regarding the alleged offensive conduct of his co-workers.[8]   (Field Aff. ¶ 8; Jimenez Aff. ¶ 3; Pl.'s 56.1 ¶ 52; Defs.' 56.1 ¶ 52.)   In addition, plaintiff concedes that he complained *only* to Frey regarding his co-workers' allegedly offensive conduct, and that Frey failed to relay such complaints to others within the company. (Defs.' 56.1 ¶¶ 22, 27; Pl.'s 56.1 ¶¶ 22, 27.) Thus, the Court finds, viewing the evidence in the light most favorable to plaintiff, that plaintiff has failed to offer any evidence that the individuals responsible for the adverse employment action at issue here knew of plaintiff's protected activity.[9]

---

[8] As noted *supra*, plaintiff has failed to offer any evidence contrary to defendants' assertion and the evidence in the record demonstrating that Field and Jimenez lacked knowledge of plaintiff's protected activity.  (*See* Defs.' 56.1 ¶ 52; Pl.'s 56.1 ¶ 52.) Indeed, plaintiff has failed even to allege or to offer a conclusory assertion that those individuals knew or should have known of plaintiff's complaints to Frey.

[9] The court in *Gordon* further noted that, notwithstanding the decisionmakers' lack of knowledge of the protected activity, "[a] jury . . . can find retaliation . . . so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." 232 F.3d at 117. Here, there is absolutely no evidence in the record from which a jury could find that Field and Jimenez knew of plaintiff's complaints to Frey.  Rather, it is

Second, plaintiff has failed to offer evidence of disparate treatment of individuals similarly situated to plaintiff from which a reasonable jury could infer that defendants retaliated against plaintiff for engaging in protected activities.   The determination of whether a plaintiff is similarly situated to other individuals in "all material respects," varies on a case by case basis, but must be judged based on (1) whether the plaintiff and those individuals whom he maintains are similarly situated to him were subject to the same workplace standards; and (2) whether the conduct for which the employer imposed discipline on the plaintiff was of comparable seriousness to that of the purported comparators. *Graham*, 230 F.3d at 40.  The plaintiff's conduct need not be *identical* to that of the employee with whom he seeks to compare himself in order for the two to be considered similarly situated; rather, there need only be an "objectively identifiable basis for comparability," that is "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.* (internal citation omitted).   "Put differently, where a plaintiff seeks to prove that an inference of discrimination exists by offering proof of disparate treatment of other employees, 'those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'"   *Albury v. J.P. Morgan Chase*, No. 03 Civ. 2007 (HBP), 2005 WL 746440, at *9 (S.D.N.Y. March 31, 2005) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)); *see also Lucibello v. Yale-New Haven Hosp.*, No 3:03 Civ. 0814

---

undisputed that plaintiff complained to Frey, and Frey alone, regarding his co-workers' alleged offensive conduct. Furthermore, it is not alleged that Field and/or Jimenez were acting upon the orders of a superior with knowledge of plaintiff's protected activity.

(RNC), 2005 WL 578324, at *6 (D. Conn. March 10, 2005) ("In cases involving disparate treatment with regard to discipline, the plaintiff must show that the conduct of the other employee was of comparable seriousness.").

Here, plaintiff points to the purportedly disparate treatment of three other VNS employees: Gioe, Donnelly, and Soccio (hereinafter, the "comparators"). Specifically, plaintiff asserts that he was terminated even though he had not engaged in any sexually offensive conduct in the workplace, while the comparators, who had engaged in such conduct – but did not file complaints regarding allegedly harassing conduct by co-workers – were not terminated. (*See* Pl.'s Br. at 13-14.) According to plaintiff, such disparate treatment establishes a causal connection for the purposes of the *prima facie* standard.

However, plaintiff has failed to establish a genuine issue as to whether the comparators and plaintiff were similarly situated. As noted above, plaintiff asserts that the comparators engaged in sexually offensive conduct in the workplace, and that VNS employees complained of such conduct to VNS management.[10]   By contrast, the adverse

employment action suffered by plaintiff in this action – namely, the elimination of plaintiff's position at VNS – is entirely unrelated to sexually inappropriate workplace conduct by plaintiff. That is, defendants do not assert that sexually inappropriate conduct on plaintiff's part served as a basis for the elimination of plaintiff's position. Similarly, plaintiff fails to argue, or to point to any evidence in the record indicating that defendants relied on sexually inappropriate conduct on plaintiff's part as a basis for eliminating his position. Instead, as discussed *supra*, defendants assert that plaintiff's position was eliminated as a cost-cutting measure, and plaintiff asserts that his position was eliminated in retaliation for his complaints of discrimination – thus, *neither* party asserts that *any* workplace misconduct on plaintiff's part, of a sexual nature or otherwise, served as a reason for the elimination of his position.[11]   As such, a comparison of plaintiff's conduct with the alleged sexual misconduct of his co-workers

---

[10]   Specifically, with regard to Gioe, it is undisputed that three VNS employees made complaints regarding his allegedly inappropriate conduct in the workplace: (1) two employees complained that Gioe made sexually inappropriate comments in the workplace; and (2) a third employee complained that Gioe showed her a sex toy in the office.[10] (Pl.'s Br. at 18; Gioe Tr. at 27.) As punishment for the first two complaints, Gioe was directed by VNS to attend classes regarding workplace conduct, and to sign a written affidavit stating that if "anything similar" were to happen in the future, he would be discharged from his position at VNS. (Gioe Tr. at 11-12.) Gioe disputed the truth of the second complaint, and was not punished by VNS management as a result of that

complaint. (Gioe Tr. at 26-27.) With regard to Donnelly, plaintiff asserts that he overheard Donnelly make certain offensive comments and greetings to VNS employees, and that plaintiff reported such comments to Frey. (Murray Tr. at 37, 94-96.) Plaintiff asserts that Donnelly was not punished as a result of plaintiff's complaints. (Pl.'s Br. at 4; Murray Tr. at 59-60.) Finally, with regard to Soccio, plaintiff asserts that Soccio was not disciplined after he "drew and distributed" the picture throughout the office. (Pl.'s Br. at 13-14.)

[11]   While defendants have noted that certain VNS employees complained in 2003 that plaintiff favored female employees and improperly met with female employees behind closed doors, (*see* Defs.' 56.1 ¶ 35), it is undisputed that defendants did not rely on such complaints as a basis for terminating plaintiff's position at VNS; indeed, on the record before the Court, it appears that plaintiff did not suffer any adverse employment action on the basis of such complaints. Furthermore, even assuming *arguendo* that defendants *had* relied on such complaints as a reason for plaintiff's demotion, plaintiff's Title VII claims relating to his demotion are time-barred for the reasons discussed in Part III.B.1, *supra*.

is wholly irrelevant to the retaliation claim in this case. *See Wallace v. Seacrest Linen*, No. 04 Civ. 6035 (GBD), 2006 WL 2192777, at *6 (S.D.N.Y. Aug. 2, 2006) (rejecting plaintiff's argument that two employees were similarly situated where it was clear that "plaintiff and the [comparator] employee had not engaged in comparable conduct"); *Albury*, 2005 WL 746440, at *10 (granting summary judgment where "[the purported comparator] cannot be said to be 'similarly situated' to plaintiff for the purposes of establishing disparate treatment because the facts and circumstances involving his termination are not even remotely comparable to those involving plaintiff's termination"); *Lee v. ITT Standard*, 268 F. Supp. 2d 315, 343 (W.D.N.Y. 2002) (granting summary judgment as against a Title VII discrimination claim where plaintiff had, *inter alia*, "not explained how [the purported comparators] were similarly situated").

In any event, even assuming *arguendo* that plaintiff had presented some evidence that he was similarly situated to the comparators, the Court finds that there is an insufficient evidentiary basis from which a jury could assess the relative seriousness of plaintiff's and the comparators' conduct, and conclude that the comparator's conduct was of comparatively equal or greater seriousness than any actions taken by plaintiff.

First, as to Gioe, plaintiff has failed to offer any evidence regarding (1) the nature or content of Gioe's alleged sexually offensive comments; and/or (2) whether the alleged incident involving Gioe's display of a sex toy in the workplace was reported to VNS or the manner in which VNS resolved any complaints arising from that incident. Second, plaintiff's evidence regarding the purported misconduct by Donnelly consists solely of a tentative allegation that Donnelly

may or may not have greeted a group of male VNS employees by stating "good morning ladies." (*See* Murray Tr. at 37.)

Finally, with regard to Soccio, the sole evidence relating to his participation in drawing and distributing the picture is plaintiff's deposition testimony, wherein plaintiff states that a co-worker told him that Soccio drew the picture and shared it with co-workers. (*See* Murray Tr. at 84; Soccio Tr. at 8.) Clearly, plaintiff's testimony concerning Soccio's alleged misconduct is inadmissible hearsay – at least when offered for the purpose of establishing that Soccio actually drew and distributed the picture – and, thus, cannot be relied on to establish a genuine issue as to whether Soccio engaged in misconduct of comparable or greater seriousness than the conduct for which plaintiff was allegedly punished. *See, e.g., Caputo v. Pfizer, Inc.*, 267 F.3d 181, 188 (2d Cir. 2001) (stating that summary judgment is appropriate only if *admissible* evidence establishes that there is no genuine issue of material fact); *Gambrell v. Nat'l R.R. Passenger Corp.*, No. 01 Civ. 6433 (NRB), 2003 WL 282182, at *7 (S.D.N.Y. Feb. 23, 2003) (same). Thus, viewing the evidence in the light most favorable to plaintiff, it is beyond doubt that there is an insufficient evidentiary basis from which a reasonable jury could conclude the comparators were treated more favorably than plaintiff. *See McDowell v. T-Mobile USA, Inc.*, No. 04 Civ. 2909 (DGT), 2007 WL 2816194, at *10 (S.D.N.Y. Sept. 26, 2007) (rejecting plaintiff's disparate treatment argument "[b]ecause plaintiff bears the burden of proof, [and the] absence of any proof showing that [the purported comparator] was treated more favorably is fatal to plaintiff's claim").

Accordingly, for the foregoing reasons, the Court finds that, viewing the evidence in

the light most favorable to plaintiff, no reasonable jury could find that Gioe's, Donnelly's, and Soccio's respective situations were sufficiently similar to plaintiff's so as to support at least a "minimal inference" that the difference of treatment may be attributable to a retaliatory motive on the part of defendants.[12] Instead, the Court finds the comparators' situations to be "entirely different" from plaintiff's situation. *Albury*, 2005 WL 746440, at *10; *see Toriola v. N.Y.C. Transit Auth.*, No. 02 Civ. 5902 (RJH), 2005 WL 550973, at *5 (S.D.N.Y. March 9, 2005) ("Because [the plaintiff] fails to identify any similarly situated employees afforded preferential treatment or otherwise adduce any evidence in support of his claims, the Court finds that [the plaintiff] has failed to meet his *prima facie* burden with respect to his disparate treatment claim.").

Thus, because plaintiff fails to offer circumstantial evidence to satisfy the causal connection prong of the *prima facie* standard, plaintiff must rely upon temporal proximity to establish causation. "'The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.'" *Campbell*, 2006 WL 839001, at *13 (quoting *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (internal quotation marks and citation omitted). Notably, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554 (2d Cir. 2001). However, district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation. *See, e.g., Garrett v. Garden City Hotel*, No. 05 Civ. 0962 (JFB), 2007 WL 1174891, at *21 (E.D.N.Y. April 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases); *Ruhling v. Tribune Co.*, No. 04 Civ. 2430 (ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan.3, 2007) (finding that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *Nicastro v.* Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y.1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation."); *cf. Reuland v. Hynes*, No. 01 Civ. 5661, 2004 WL 1354467, at *11 (S.D.N.Y. June 17, 2004) (finding a four-and-one-half-month gap sufficient to sustain an

---

[12] The Court also notes that, with regard to Soccio and Donnelly, it is undisputed that they worked under a different supervisor than plaintiff. "In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated." *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) (collecting cases*); see also Downes v. Potter*, No. 04 Civ. 3876 (JFB), 2006 WL 2092479, at *11 n.4 (E.D.N.Y. July 26, 2006) (citing *Conway* and stating that "although the existence of different supervisors is not necessarily dispositive under the Second Circuit case law in determining whether two employees are similarly situated, it is obviously an important factor."). Accordingly, the Court rejects plaintiff's argument that Soccio and Donnelly are similarly situated for the additional reason that plaintiff reported to a different supervisor than those employees.

inference of causation). Furthermore, in *Breeden*, the Supreme Court approvingly cited two circuit court decisions which held that a three to four month gap between the protected activity and the alleged retaliation was insufficient to draw an inference of causation. *Breeden*, 532 U.S. at 273-74 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)).

Viewing the evidence in the light most favorable to plaintiff, the relevant dates regarding the sequence of events in this action are: plaintiff made a complaint regarding his co-workers' allegedly offensive comments in the workplace at some point in "early 2003" (Murray Tr. at 32);[13] plaintiff made a complaint to Frey regarding the picture in March 2004 (Defs.' 56.1 ¶ 26; Pl.'s 56.1 ¶ 26; Murray Tr. at 64.); and defendants decided to terminate plaintiff sometime in early November 2004 (Field Aff. ¶ 6; Jimenez Aff. ¶ 4). Thus, dividing the year into thirds (January through April being "early", and September through December being "late") and construing the periods between these approximate dates in plaintiff's favor, there was approximately seventeen to nineteen months between plaintiff's 2003 complaint and the termination decision, and approximately seven to eight months between his 2004 complaint and the termination decision.

Based on these facts, it is beyond doubt that, with regard to the termination decision, there is insufficient evidence to infer a causal connection between plaintiff's protected activities and his termination. For this reason,

---

[13] At his deposition, plaintiff could not recall the date with any greater degree of specificity: "It was early on in 2003, I believe. One second. I'm not sure. Yeah. I believe it was early on in 2003. I'm not sure exactly of the date or the month." (Murray Tr. at 32.)

plaintiff's retaliation claim must fail.

### b. Evidence of Pretext

Even assuming *arguendo* that an inference of unlawful retaliation as to the termination decision could be drawn from this evidence, "it would, at best, only make out [p]laintiff's initial burden of establishing a *prima facie* case under *McDonnell Douglas . . . .*" *Campbell*, 2006 WL 839001, at *14. Nevertheless, as set forth below, plaintiff's retaliation claims must still fail at the final step of the *McDonnell Douglas* analysis.

Here, under step two of the *McDonnell Douglas* analysis, defendants have proffered admissible evidence in support of their legitimate, nondiscriminatory reasons for eliminating plaintiff's position – namely, that plaintiff's position was eliminated as a cost-saving measure where plaintiff's duties could be assumed by another VNS employee and every other VNS field office operated without the position of field security manager. (*See* Defs.' 56.1 ¶¶ 49, 50, 52; Pl.'s 56.1 ¶¶ 49, 50, 52; Murray Tr. at 61, 116-17; Field Aff. ¶¶ 6, 8; Jimenez Aff. ¶¶ 3, 4.); *Patterson*, 375 F.3d at 221 (observing that, under step two, the employer must satisfy its "burden of production" by "articulat[ing] some legitimate, nondiscriminatory reason for the termination supported by admissible evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action") (internal quotations marks and citations omitted).

Accordingly, the burden shifts back to plaintiff "to show that the reason was merely a pretext for discrimination." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994). "A reason cannot be proved to be a pretext . . . unless it is shown both that the

reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (emphases and internal quotation marks omitted). Nevertheless, "[s]ummary judgment is appropriate . . . only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact."

Proceeding to step three of the *McDonnell Douglas* analysis, the Court finds that there is insufficient evidence for a reasonable jury to conclude that defendants' proffered reasons for eliminating plaintiff's position were actually a pretext for retaliation. Indeed, as discussed *supra*, plaintiff has failed to argue or to offer any evidence contrary to defendants' assertions that (1) the VNS managers actually responsible for eliminating plaintiff's position were unaware of plaintiff's protected activities; (2) another VNS employee had already assumed many of plaintiff's remaining job responsibilities; and (3) the other VNS field offices operated without the position of Field Security Manager. (*See* Defs.' 56.1 ¶¶ 50, 52; Murray Tr. at 61.)  Moreover, plaintiff has failed, for the reasons discussed *supra*, to proffer any evidence establishing that other VNS employees were treated more favorably than plaintiff due to the fact that they had not engaged in protected activity, or otherwise establishing a causal connection between plaintiff's protected activities and his termination.  Thus, even assuming *arguendo* that there was sufficient temporal proximity between plaintiff's complaints and the termination decision to infer causation at the *prima facie* stage,[14] plaintiff fails to offer any

evidence from which a reasonable jury could infer that defendants' proffered reason was a pretext and that plaintiff's termination was, in fact, the product of a retaliatory motive. Accordingly, because the evidence as a whole is insufficient to sustain a reasonable finding that defendants' proffered reasons for eliminating plaintiff's position are a pretext for retaliation, plaintiff's retaliation claim is dismissed.

### 5. Hostile Work Environment Claim

Plaintiff's hostile work environment claim is grounded on the conduct by his co-workers recited above, as well as other conduct discussed below. Plaintiff regards this conduct as sufficiently severe or pervasive to satisfy the Title VII standard of a hostile or abusive working environment.   For the following reasons, the Court finds that the evidence is insufficient to support a reasonable determination in favor of plaintiff's claim.

A hostile work environment, in violation of Title VII, is established by a plaintiff showing that his workplace was "permeated

---

[14]  "[M]ere temporal proximity," by itself, is insufficient to support a claim of retaliation at the summary judgment stage, at least where the defendant proffers a legitimate reason for the plaintiff's discharge with evidentiary support

therefor.  *See, e.g.*, *Vosatka v. Columbia Univ.*, No. 04 Civ. 2936 (LAP), 2005 WL 2044857, at *10 (S.D.N.Y. Aug. 25, 2005) ("Although the sequence and timing of events, alone, creates an inference of discrimination sufficient to satisfy plaintiff's burden in the first step of the *McDonnell Douglas* analysis, . . . the timing of events alone, even if sufficient to meet the plaintiff's *prima facie* burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason.") (internal quotation marks and citations omitted) (collecting cases); *Smith v. Revival Home Health Care, Inc.*, No. 97 Civ. 4415 (RJD), 2000 WL 335747, *7 (E.D.N.Y. March 28, 2000) ("[M]ere temporal proximity cannot support a claim of retaliation."); *Chojar v. Levitt*, 773 F. Supp. 645, 655 (S.D.N.Y. 1991) (finding that plaintiff could not refute employer's proffered reasons, and thus avoid summary judgment, by "merely pointing to the inference of causality resulting from the sequence in time of the events").

with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by, Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 753 (1998); *see Feingold*, 366 F.3d at 150; *see also Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003). Although the Second Circuit has held that there is no "magic" threshold number of harassing incidents that are required, as a matter of law, to state a claim, s*ee Richardson*, 180 F.3d at 439, "[i]solated instances of harassment ordinarily do not rise to this level." *Cruz*, 202 F.3d at 570. Generally, however, a hostile work environment is determined by "all the circumstances," including "the frequency of the discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating, or a mere offensive utterance . . . ." *Howley*, 217 F.3d at 154 (quoting *Harris*, 510 U.S. at 23); s*ee Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998) (holding that "simple teasing . . . offhand comments, isolated incidents (unless extremely serious)" are not discriminatory changes in the "terms and conditions of employment"); *Brennan v. Met. Opera Ass'n*, Inc., 192 F.3d 310, 318 (2d Cir. 1999) (holding that "[i]solated, minor acts or occasional episodes do not warrant relief"); *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that, to meet his burden, the plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice); *see also DelaPaz v. N.Y. City Police Dep't*, No. 01 Civ. 5416 (CBM), 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 30, 2003) ("[T]he Second Circuit erected a remarkably high hurdle with respect to the level and frequency of offensive conduct that must be

present in order to sustain . . . a [hostile environment] claim."). For the following reasons, the Court finds that the alleged harassing conduct by defendants fails to rise to the severe or pervasive level required to support a claim of hostile work environment.

As an initial matter, the Court notes plaintiff's concession that the conduct at issue in this case did *not* "adversely affect[] the terms and conditions of [his] own employment." *Leibovitz v. New York City Transit Authority*, 252 F.3d 179, 190 (2d Cir. 2001). Specifically, plaintiff has testified that the alleged harassing comments did not affect his "work performance," and that, regardless of the comments, he "got things done . . . ." (Murray Tr. At 99-100.) Thus, it is clear that none of the alleged comments, taken separately or as a whole, subverted "plaintiff's ability to function in the workplace." *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002); *accord Blackmon v. UNITEA*, No. 03 Civ. 9214 (GWG), 2005 WL 2038482, at *14 (S.D.N.Y. Aug. 25, 2005) ("[The plaintiff's] hostile work environment claim must fail because her declaration points to 'no resulting disadvantage or adverse effect on her job performance' caused by the incidents she describes.") (quoting *Alfano*, 294 F.3d at 376); *Wilson v. Consol. Edison Co. of N.Y., Inc.*, No. 96 Civ. 7546 (RCC), 2000 WL 335733, at *6 (S.D.N.Y. March 30, 2000) (granting summary judgment as to the plaintiff's hostile work environment claim where the plaintiff failed to describe "how he was harmed or how his alleged hostile work environment interfered with his work performance"); *see also Ogbo v. New York State Dep't of Finance*, No. 99 Civ. 9387 (HB), 2001 WL 986546, at *7 (S.D.N.Y. Aug 28, 2001) (granting summary judgment where the plaintiff "failed to introduce evidence as to how the alleged comments effected him in particular"). Accordingly, "[t]he fact that

plaintiff concedes that the [alleged harassing comments at issue] had no effect on [his] ability to perform the functions of [his] job . . . weighs in favor of granting summary judgment to defendant." *Portee v. Deutsche Bank*, No. 03 Civ. 9380 (PKC), 2006 WL 559448, at *13 (S.D.N.Y. March 8, 2006).

Furthermore, the alleged harassing comments relied on by plaintiff in support of his claim do not rise to the level of severe or pervasive harassment necessary to sustain a reasonable finding that his workplace was "permeated" with discriminatory intimidation. *Howley*, 217 F.3d at 153.

With regard to the majority of the comments identified by plaintiff, it is undisputed that they relate to portions of conversations among his co-workers that plaintiff overheard during his time at VNS. Specifically, according to plaintiff, he overheard co-workers state to one another, while they were located in an office approximately fifteen feet away from plaintiff's own office, the following:

> "you're such a bitch"; "good morning ladies"; "[he is] on the rag"; "when are you going to come out of the closet"; and "are you ladies going to the parade?"

(Murray Tr. at 35, 94.) Plaintiff fails to offer any admissible evidence regarding the frequency with which he overheard such comments during the approximately four and one-half years he spent at VNS and, as such, the comments "do not appear to have been continuous, concerted, or anything more than isolated remarks . . . overheard by plaintiff." *Portee*, 2006 WL 559448, at *12. In addition, it is undisputed that the above-cited comments were not directed at plaintiff. *See, e.g., Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180,

192 (S.D.N.Y. 2004) (granting summary judgment as to the plaintiff's hostile work environment claim and finding that two racially discriminatory comments overheard by the plaintiff "were stray remarks at best").

With regard to the allegedly offensive greetings directed at groups of co-workers that included plaintiff, the Court finds that no reasonable jury could conclude that such greetings were sufficiently severe or abusive so as "to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Howley*, 217 F.3d at 153. Plaintiff asserts that the greetings – wherein, as recited *supra*, Soccio and/or possibly other VNS employees stated "good morning ladies. How're you girls doing today?" (Murray Tr. at 37) – occurred approximately "twice a week, once a week, maybe four times the next week." (Murray Tr. at 37.) However, notwithstanding their frequency, it appears that the greetings were not even *hostile*; "indeed, they are more accurately classified as friendly, even if they made plaintiff uncomfortable." *Goldman*, 2007 WL 1552397, at *10. Plaintiff shares this view: as noted *supra*, he characterized Soccio's demeanor when voicing these greetings as being "like good morning . . . like matter of fact . . . . [I]t was like everyday how do you do." (Murray Tr. at 38.) Accordingly, with regard to the greetings, although plaintiff "may have been justifiably offended" that the greeting referred to the members of the group being addressed as "ladies", the "'mere utterance of an . . . epithet which engenders offensive feelings in a employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Williams v. British Airways, PLC*, Nos. 04 Civ. 0471, 06 Civ. 5085 (CPS), 2007 WL 2907426, at *11 (E.D.N.Y. Sept. 27, 2007) (quoting *Harris*, 510 U.S. at 21 (internal quotations and citation omitted)).

Furthermore, with regard to the lone comment that was allegedly directed at plaintiff individually,[15] as well as the picture found by plaintiff and the two to three instances where plaintiff saw Frey "adjust himself" in the office (Murray Tr. at 92-93), the Court finds that such conduct, considered alongside the other alleged conduct recited *supra*, is not sufficiently severe or pervasive to enable plaintiff to overcome defendants' motion for summary judgment. *See, e.g., Alfano*, 294 F.3d at 374 ("As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ("[I]solated remarks or occasional episodes will not merit relief under Title VII; . . . to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive."), *abrogated on other grounds by Morgan*, 536 U.S. 101.

Finally, the Court notes that, with regard to those comments that plaintiff learned of second-hand after the commencement of this action, it is beyond doubt that they "add little" to plaintiff's hostile environment claim. *Green*, 331 F. Supp. 2d at 192. Specifically, plaintiff relies on several allegedly harassing comments made to one of his co-workers, Gecaj, and outside of plaintiff's presence (hereinafter, the "Gecaj comments"). (*See* Pl.'s Br. at 20; Gecaj Tr. at 11-12.) However, plaintiff has failed to offer any evidence demonstrating that he was aware of the Gecaj comments during his employment at VNS. Accordingly, because plaintiff "was not [him]self a target of the alleged harassment,

was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing," the Court finds that plaintiff has failed to adduce evidence sufficient to enable a reasonable jury to find that the Gecaj comments, taken together with the other evidence discussed herein, constituted severe or pervasive harassment. *Leibovitz*, 252 F.3d at 190.

In sum, although some of the conduct alleged by plaintiff may be construed as offensive and/or inappropriate, it is not, taken as a whole under the circumstances of this case, sufficient to sustain a reasonable finding of a hostile work environment. In other words, after considering all of the conduct discussed *supra*, the Court finds that such conduct is insufficiently severe or pervasive as a matter of law to have "altered the conditions of [plaintiff's] employment and create[d] an abusive working environment." *Feingold*, 366 F.3d at 149 (internal quotations and citations omitted). Consequently, as no reasonable jury could conclude that plaintiff was subjected to a hostile work environment, summary judgment is granted in favor of defendants with respect to this claim.

### C. State and City Claims

Because plaintiff's federal claims are dismissed, the Court must decide whether federal jurisdiction exists over the remaining state and city claims. Both the Second Circuit and the Supreme Court have held that "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)). Although exercising supplemental jurisdiction is discretionary, the usual case "'will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting

---

[15] Specifically, plaintiff asserts that Gioe pointed to an object that had fallen on the floor and told plaintiff "why don't you bend over and pick that up and I will drive you home." (Murray Tr. At 97.)

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see* 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases); *see also Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) (noting that it is particularly appropriate for the district court to dismiss where "the federal claim on which the state claim hangs has been dismissed"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

In the instant case, although the Court recognizes that dismissal of plaintiff's pendent state claims is "not absolutely mandatory," *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988), the Court declines to exercise jurisdiction over plaintiff's state law claims. While discovery has been completed and the instant case has proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if plaintiff's pendent claims were brought in state court. *See, e.g., Kelsey v. City of New York*, No. 03 Civ. 5978 (JFB), 2006 WL 3725543, at *11 (E.D.N.Y. Sept. 18, 2006) (declining to exercise jurisdiction over state claim where, *inter alia*, "it is not clear to the [c]ourt why the discovery would need to be repeated if the [state law] negligence claim is litigated in state court"); *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 255 (S.D.N.Y. 2005) (declining to exercise jurisdiction over state law claims where there was no indication that discovery would need to be repeated in state court); *Ellenbogen v. Projection Video Serv., Inc.*, No. 99 Civ. 11046 (NRB), 2001 WL 736774, at *13 (S.D.N.Y. June 29, 2001) (declining to exercise jurisdiction over plaintiff's sexual orientation discrimination claims under state law). Furthermore, "since New York's CPLR § 205 allows a plaintiff to recommence a

dismissed suit within six months without regard to the statute of limitations, [the plaintiff] will not be unduly prejudiced by the dismissal of her state law claims."[16] *Trinidad v. N.Y.C. Dep't of Corrs.*, 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006) (granting summary judgment as to the plaintiff's Title VII claims and declining to exercise jurisdiction over the remaining state law discrimination claims) (citing *Mayer v. Oil Field Systems Corp.*, 620 F. Supp. 76, 77-78 (S.D.N.Y. 1985)); *see, e.g., Henkin v. Forest Lab., Inc.*, No. 01 Civ. 4255 (AKH), 2003 WL 749236, at *10 (S.D.N.Y. March 5, 2003) (granting summary judgment, *inter alia*, as to the plaintiff's Title VII discrimination claims, and declining to exercise supplemental jurisdiction in part where "plaintiff will not be barred from bringing her claim before the state court, since her claim is tolled under New York Civil Practice Law § 205(a)"); *Houston v. Fidelity (Nat'l Fin. Servs.)*, No. 95 Civ. 7764 (RWS), 1997 WL 97838, at *11 (S.D.N.Y. March 6, 1997) (refusing to exercise supplemental jurisdiction over the plaintiff's state law discrimination claims against the individual defendants and noting that "New York CPLR § 205(a) provides that when a claim is dismissed without prejudice, the party has six months after dismissal to commence a new

---

[16] The Court also notes that, under 28 U.S.C. § 1367(d), "the period of limitations for any pendent state law claim that is dismissed at the same time as or after the dismissal of a federal claim 'shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.'" *Sullivan v. Stein*, No. Civ.3:03 CV 1203(MRK), 2004 WL 1179351, at *21 n.7 (D. Conn. May 21, 2004) (quoting 28 U.S.C. § 1367(d)); *see, e.g., Seabrook*, 153 F.3d at 72 ("Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed [in federal court] has at least thirty days after dismissal to refile in state court. Some states, including New York, allow a longer period. *See* N.Y. C.P.L.R. § 205(a) (McKinney 1990) (allowing plaintiffs six months to refile).").

action based on the same transaction or occurrence, even if the statute of limitations has run. Thus, Plaintiff will be able to bring his claims against the individual defendants in the State Court."). Accordingly, having considered the "balance of factors . . . under the pendent jurisdiction doctrine," including "judicial economy, convenience, fairness, and comity," the Court dismisses plaintiff's state law claims without prejudice. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where "federal-law claims are eliminated before trial, the . . . factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

### IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED as to plaintiff's Title VII claims. Because the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state and city law claims, those claims are DISMISSED without prejudice. The Clerk of the Court shall close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: October 31, 2007
New York, New York

* * *

Plaintiff is represented by Gregory Scolieri, Esq., Rick Ostrove, Esq., and Thomas Anthony Ricotta, Esq., Leeds Morelli & Brown, P.C., One Old Country Road, Suite 347, Carle Place, New York 11514. Defendants are represented by John Patrick Keil, Esq., Collazo Carling & Mish LLP, 747 Third Avenue, 25th Floor, New York, New York 10017.